**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

IN RE:

MELISSA KAY RUSSELL                                                                    CASE NO. 09-54114

DEBTOR


MELISSA KAY RUSSELL                                                                    PLAINTIFF

VS:                                                                                                   ADV. NO. 10-5043

VALUED SERVICES OF KENTUCKY, LLC,                                         DEFENDANTS
DBA FIRST AMERICAN CASH ADVANCE

**MEMORANDUM OPINION**

K.R.S. § 286.9-100(15) protects consumers by prohibiting deferred deposit businesses from charging a fee to "renew, rollover, or otherwise consolidate a deferred deposit transaction for a customer." The issues under consideration are (1) whether a series of deferred deposit transactions between the Debtor Melissa Kay Russell and the Defendant Valued Services of Kentucky d/b/a First American Cash Advance ("Valued Services") violates K.R.S. § 286.9-100(15)[1] as an impermissible "renewal" and (2) if such transactions are "renewals" and thus prohibited, whether the fee charged in connection with these transactions violates Kentucky's usury law, or K.R.S.§ 360.010. Because the transactions at issue are independent successive transactions, they are not prohibited by K.R.S. § 286.9-100(15). The transactions are therefore valid and protected from Kentucky's usury laws by K.R.S. § 286.9-100(2).

---

[1] Because the deferred deposit transactions at issue herein occurred prior to the revisions to K.R.S. § 286.9-100, effective January 1, 2010, the Court relies upon the language of the statute in effect at the time the transactions occurred.

**Undisputed Facts**

The parties do not dispute the facts that give rise to the series of deferred deposit transactions at issue. The Debtor was a customer of Valued Services from February 2, 2009 until December 4, 2009. On February 2, 2009, the Debtor executed and delivered a Customer Agreement to Valued Services. Under the terms of the Customer Agreement, Valued Services provided the Debtor with $425.00 in cash. In return, the Debtor issued Valued Services a personal check in the amount of $499.97, representing the $425.00 in cash and a fee of $74.97.[2] Valued Services agreed not to present or deposit the check for 30 days. Pursuant to the agreement, the Debtor had the option to "buy back" the check prior to the expiration of the 30 day period for the face amount of the check.

On February 28, 2009, prior to the expiration of the 30 day period, the Debtor paid Valued Services $499.97 *in cash* and Valued Services returned the Debtor's personal check. The Debtor's budget could not afford the loss of the amount to buy back her check. As a result, on that same day, the Debtor executed and delivered to Valued Services a new Customer Agreement for a deferred deposit transaction for $425.00 in cash with the same terms and conditions as the prior transaction.

Between February 28, 2009, and December 4, 2009, the Debtor executed thirteen Customer Agreements with Valued Services, each in the amount of $425.00. On each occasion, except for the last transaction, the Debtor paid the amount of the deferred deposit and the fee in full *with cash* prior to entering into the next Customer Agreement with Valued Services on the

---

[2] Pursuant to K.R.S. § 286.9-100(11) (in effect prior to January 1, 2010), a deferred deposit transaction business may not accept a deferred deposit transaction in an amount that exceeds $500.00.

same day for the same terms and conditions.

The thirteenth and last transaction occurred on December 4, 2009. After entering into this final Customer Agreement, the Debtor failed to pay back her check within 30 days. On December 29, 2009, the Debtor filed her Chapter 13 bankruptcy petition. Valued Services later timely filed an unsecured claim in the amount of $499.97.

The Debtor subsequently filed the present action seeking damages in excess of $1499.99, or twice the interest, fees, and financial charges paid in connection with each transaction, on the basis that the transactions violate K.R.S. § 286.9-100(15), making the fees charged usurious interest pursuant to K.R.S. § 360.010. The parties have filed cross-motions for summary judgment. The Debtor argues that each of the transactions were prohibited renewals of a previously existing deferred deposit transaction, meaning the fees charged in connection with these transactions are not protected by this statute and the $74.97 fee constitutes an interest rate of 207.70% which she contends is usurious within the meaning of K.R.S. § 360.010. In contrast, Valued Services argues that because the Debtor would complete and close out her previous agreement with Valued Services before entering into a second agreement with Valued Services the same day, each transaction was distinct and not a renewal of the previous contract. Thus, the fees charged in connection to these transactions are authorized pursuant to K.R.S. § 286.9-100(2). The parties have agreed to submit the matter on the record for this Court's determination.

### Analysis of K.R.S. § 286.9-100(15)

To determine whether the series of deferred deposit transactions are prohibited, the Court must engage in an interpretation of K.R.S. § 286.9-100(15). Statutory canons are numerous;

however, statutory construction must start with the plain language of the statute. If the language of a statute is "clear and unambiguous and if applying the plain meaning of the words would not lead to an absurd result, further interpretation is unwarranted." *Autozone, Inc. v. Brewer*, 127 S.W.3d 653, 655 (Ky. 2004). Moreover, "all words and phrases shall be construed according to the common and approved usage of language." K.R.S. § 446.080(4) (2010). Thus the first question is whether K.R.S. § 286.9-100(15) is clear and unambiguous. Giving the statutory terms their plain meaning, the statute clearly and unambiguously prohibits a deferred deposit business from engaging in three types of transactions.

K.R.S. § 286.9-100(15) states "A licensee or its affiliate shall not for a fee renew, rollover, or otherwise consolidate a deferred deposit transaction." The parties agree that Valued Services is a licensee within the meaning of the statute. Further, there is no dispute that the transactions are deferred deposit transactions. The question is how to interpret the terms "renew, rollover, or otherwise consolidate" in the context of the statute.

The statute does not define the terms "renew," "rollover," or "consolidate." The Court thus looks to Black's Law Dictionary and Webster's Third New International Dictionary, Unabridged, to understand the plain meaning of these terms. Black's defines a "renewal" as "the re-creation of a legal relationship or the replacement of an old contract with a new contract, as opposed to the mere extension of a previous relationship or contract." BLACK'S LAW DICTIONARY (8th ed. 2004). In Webster's, "renewal" is defined as "a forbearance from enforcing an obligation (as on commercial paper) in virtue of an agreement by which the obligee relinquishes his right of action for a definite period or until a specified date." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED (2002). This definition of "renewal"

Case 10-05043-tnw    Doc 27    Filed 10/25/10    Entered 10/26/10 07:57:45    Desc Main
                         Document      Page 5 of 7

contemplates the "re-creation" or "replacement" of an already existing contract; thus, a renewal requires the existence of a previous contract.

Similarly, both Black's and Webster's dictionaries define "rollover" as "the extension or renewal of a short-term loan; the refinancing of a maturing loan or note." BLACK'S LAW DICTIONARY (8th ed. 2004); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED (2002). Here, "renewal" is treated as a synonym of "rollover" and, like a renewal of a contract, cannot occur without the existence of a previous contract, the terms of which may be extended or renewed in the subsequent contract.

Finally, both authorities define "consolidate" as "to combine or unify into one mass or body." *Id*. Again, this requires two transactions that are merged into one.

The terms "renew" and "rollover," followed by "to otherwise consolidate," are separated by commas in the statute. These definitions, and their placement in the statute, show that the statute prohibits three similar kinds of transactions that share one common theme - each contemplates a relationship shared between the first and second transaction such that the second transaction's terms depend on the existence and obligations of the first transaction. The parties agree in their summary judgment briefs that the deferred deposit transactions are not rollovers or consolidations. Thus, the issue is whether the transactions are impermissible renewals.

The Debtor did not "renew" her contract with Valued Services within the plain meaning of the term "renewal." The "renewal" of a contract contemplates a new contract based on an existing obligation. If a contract is renewed, then the party enforcing the contract agrees to forbear from enforcing the obligation as against the obligor for a certain period of time. In such a situation, the old contract is replaced by the new contract whereby the obligor still owes the

same obligation to the obligee but for a different period of time in which to comply. This is not what happened here.

The Debtor and Valued Services entered into thirteen separate and independent agreements. Each time that the Debtor paid Valued Services $499.97 to "buy back" her post-dated check for the same amount *in cash*, the prior Customer Agreement terminated and she owed no further obligation to Valued Services. At that point, the Debtor had the choice to (1) do no further business with Valued Services; (2) enter into another transaction with Valued Services at a different date and/or time for the same or different amount; or (3) enter into another transaction with Valued Services the same day for the same or different amount. In other words, upon repurchase of her check *with cash*, the Debtor was no longer contractually bound to Valued Services. Unlike a renewal, rollover, or a consolidation, the successive transactions between the Debtor and Valued Services shared no relationship. The Debtor had the sole choice of whether to pursue a new financial transaction.

The Debtor contends her financial circumstances *required* her to enter into the subsequent transactions, as she lacked sufficient funds to afford the $499.97 necessary to "buy back" her check to Valued Services and meet her monthly expenses. While the Court recognizes the reality of the Debtor's unfortunate financial circumstances, this fact does not change the legal conclusion that these kinds of successive, independent transactions are not prohibited by the statute. The Court is without authority to construe or interpret K.R.S. § 286.9-100(15) beyond its plain language. *See Brewer*, 127 S.W.3d at 655. Therefore, the transactions between the Debtor and Valued Services are not prohibited by K.R.S. § 286.9-100(15) and the claim made by Valued Services in the Debtor's Chapter 13 bankruptcy proceeding are valid.

**Usurious Interest Pursuant to K.R.S. § 360.010**

The Debtor further argues that the fee charged by Valued Services is usurious interest. K.R.S. § 286.9-100(2) states "A fee charged by a licensee for cashing a check shall be disclosed in writing to the bearer of the check prior to cashing the check, and the fee shall be deemed a service fee and not interest." Thus, the Debtor's usury argument is premised on the invalidity of her deferred deposit transactions. Because the Court holds that the successive deferred deposit transactions are valid, the plain language of K.R.S. § 286.9-100(2) provides a safe harbor for any service fee associated with these transactions from Kentucky's usury law, or K.R.S. § 360.010. Therefore, Debtor's claims for damages under Kentucky's usury law must fail as well.

**Conclusion**

The foregoing constitutes the Court's Findings of Fact and Conclusions of Law. A separate order shall be entered accordingly.

Copies to:

Valorie D. Smith, Esq.

Addison Parker, Esq.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
*The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.*



**Signed By:**
*Tracey N. Wise*
**Bankruptcy Judge
Dated: Monday, October 25, 2010
(tnw)**